IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| JEFFREY E. JOHNSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI,[1] )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 21-06070-CV-SJ-BP-SSA |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's decision denying his application for disability insurance benefits ("DIB"). For the following reasons, the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Plaintiff Jeffrey Johnson was born in December 1969, and applied for DIB on July 19, 2019, alleging that he became disabled on April 1, 2019. (R. at 162.) Prior to his alleged onset date, Plaintiff had work experience as a corrections officer and prisoner classification interviewer. (R. at 23.)

After holding a hearing, an Administrative Law Judge ("ALJ") found that Plaintiff suffers from diabetes mellitus, peripheral neuropathy, fatty liver disease, carpal tunnel syndrome, obesity, depression, anxiety, panic disorder, post-traumatic stress disorder ("PTSD"), attention deficit hyperactive disorder ("ADHD"), and alcohol use disorder, though the final impairment is in

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of Social Security during the pendency of this case and is automatically substituted as the Defendant pursuant to Fed. R. Civ. P. 25(d).

remission. (R. at 15.) However, the ALJ found that these problems were not medically equal in severity to one of the listed impairments in 20 C.F.R. Part 404. (R. at 16.)

The ALJ then evaluated Plaintiff's Residual Functional Capacity ("RFC"). He found that, due to Plaintiff's impairments, Plaintiff can perform light work, with some modifications. (R. at 18.) Specifically, the ALJ found that Plaintiff can lift and carry ten pounds frequently and twenty pounds occasionally; can sit, stand, or walk for six hours per workday; can occasionally climb ramps or stairs, and occasionally stoop, crouch, and crawl; but must never climb ladders, ropers, or scaffolds, or work at unprotected heights or around dangerous machinery. (R. at 18.) The ALJ also found that Plaintiff can perform simple, repetitive tasks in a work environment where social interaction is not a primary job function, and can occasionally interact with coworkers and supervisors, but should avoid interactions with the general public. (R. at 18–19.)

After formulating Plaintiff's RFC, the ALJ found that Plaintiff could not perform his past relevant work, (R. at 23), but could perform work as a janitorial worker, bakery worker, or janitorial worker. (R. at 24.) In making this determination, the ALJ relied on the testimony of a Vocational Expert ("VE"), who testified at the hearing that a hypothetical person operating under the same limitations as Plaintiff could perform these jobs. (R. at 57–58.)

Plaintiff has now appealed the ALJ's determination, arguing that it was not supported by substantial evidence. The Commissioner opposes Plaintiff's appeal. The Court resolves these issues below.

## II. DISCUSSION

The Court has a limited ability to revisit the conclusions of an ALJ. Specifically, "review of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable

2

Case 5:21-cv-06070-BP   Document 16   Filed 02/25/22   Page 2 of 7

minds would accept as adequate to support the Secretary's conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Although the substantial evidence standard is favorable to the Commissioner, it requires the Court to consider evidence that fairly detracts from the Commissioner's decision. *E.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). But if the Court finds substantial evidence to support the Commissioner's decision, it cannot reverse the decision simply because there is also substantial evidence that might have supported the opposite outcome. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). With these principles in mind, the Court evaluates each of Plaintiff's arguments in turn.

1. **Plaintiff's Mental Limitations**

Plaintiff offers several reasons why he believes that the ALJ's determination as to his mental limitations is not supported by substantial evidence. (Doc. 9, p. 25.) First, Plaintiff contends that the ALJ erred in finding persuasive the opinion of Steven Akeson, Psy.D., but failing to include all of the limitations Dr. Akeson discussed in his review of Plaintiff's medical records. (*Id*.) Dr. Akeson is a state agency psychological consultant who reviewed Plaintiff's file and found, among other things, that Plaintiff was "moderately limited" in his "ability to carry out detailed instructions." (R. at 77.) Plaintiff complains that the ALJ failed to include a limitation relating to his ability to carry out instructions in the RFC. (Doc. 9, p. 25.) However, the ALJ *did* include such a limitation; the RFC indicates that Plaintiff can perform at most "simple, repetitive tasks in work requiring no more than minor changes in routine," which necessarily precludes Plaintiff from carrying out "*detailed* instructions." (R. at 18.)

Next, Plaintiff contends that while Dr. Akeson found that Plaintiff had a "[m]oderate" limitation in his ability to "[c]oncentrate, persist, or maintain pace," the ALJ failed to include attention-related limitations in the RFC. (Doc. 9, p. 26.) But "the determination of a claimant's

3

RFC at the administrative hearing level is the responsibility of the ALJ alone and is distinct from a medical source's opinion," and the ALJ can identify the limitations in the RFC by "[v]iewing the record as a whole." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (citing 20 C.F.R. § 404.1546(c)). As the ALJ pointed out, the fact that Plaintiff "was able to work successfully for many years" despite his mental issues belies his claim that he is consistently unable to concentrate, and the medical evidence indicates that Plaintiff's ability to control his thoughts and emotions has improved with medication and therapy. (R. at 21; *see also* R. at 338 (Plaintiff's mood improved with good habits); 345 (Plaintiff was "cooperative and engaged" with his therapist throughout the session); 421 (Plaintiff's ADHD medication improved his cognition).)

Finally, Plaintiff points out that three individuals, DO Michelle Stone, LPC Laurie Ward, and LCSW Melanie Lehman all wrote notes at various points suggesting that Plaintiff should not return to work due to his mental issues. (Doc. 9, p. 30; *see also* R. at 295 (Dr. Stone opines that Plaintiff "is not safe to return to work secondary to depression, PTSD and uncontrolled anger at times); 330 (LPC Ward opines that Plaintiff "is unable to resume any type of gainful employment . . . due to the severity of his trauma"); 9 (LCSW Lehman opines that "it would be very challenging for [Plaintiff] to return to the workforce").) However, these dire opinions are inconsistent with Dr. Akeson's opinion that Plaintiff can work successfully and "interact appropriately with supervisors and co-workers" as long as "social contact is not a primary job requirement," (R. at 78)—limitations that were reflected in the ALJ's RFC. (R. at 18–19.) Moreover, an opinion that a person cannot work is a legal conclusion, even if the opinion comes from a medical professional, and the ALJ may disregard it based on the record as a whole. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

At best, Plaintiff has presented evidence that would have allowed the ALJ to conclude that his mental conditions were fully disabling. But there is also evidence to support the ALJ's RFC determination, and "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009) (citation omitted).

2. **Plaintiff's Physical Limitations**

Plaintiff next argues that the ALJ erred in failing to include greater physical limitations in the RFC. (Doc. 9, p. 30.) First, Plaintiff contends that while the ALJ acknowledged that his carpal tunnel syndrome as a "severe" impairment, the ALJ failed to include any handling or reaching limitations in Plaintiff's RFC. (*Id*.) Initially, the Court notes that identifying a claimant's limitations to assess the severity of her impairments is a separate inquiry from determining the claimant's RFC, and "the different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized." *Chrismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018). Moreover, "[i]t is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003).

And the medical evidence in the record does not support any significant limitations on Plaintiff's ability to reach or handle. In July 2019—after Plaintiff's alleged onset date—Plaintiff reported no "numbness, weakness or difficulty with sensation." (R. at 367.) Subsequently, Plaintiff reported numbness in his hands, but no "weakness or difficulty with sensation" as a result, (R. at 583), and medical examinations showed normal upper extremity strength. (R. at 561.) An EMG indicated that Plaintiff had only moderate carpal tunnel syndrome in his right hand, and the

condition was mild in his left hand; the examining doctor recommended "conservative" treatment. (R. at 471.) Further, the RFC already includes limitations on Plaintiff's use of his hands—it limits his ability to lift and carry weights, for example, and forbids him from climbing ladders, ropers, or scaffolds. (R. at 18.) To the extent that Plaintiff believed there should be additional limitations related to reaching or handling, there was no medical evidence to support such limitations.

Plaintiff also contends that there should have been a reaching limitation in the RFC due to his chronic shoulder pain. (Doc. 9, p. 32.) But the ALJ did include limitations on Plaintiff's use of his upper extremities, and in doing so, relied on the opinion of Judee Bland, M.D., who reviewed Plaintiff's file. (R. at 22.) Dr. Bland considered the medical evidence of Plaintiff's shoulder pain, and concluded that he was limited to occasionally lifting and carrying up to 20 pounds, and frequently lifting and carrying up to 10 pounds, and could not climb ladders, ropes, or scaffolds. (R. at 73.) The ALJ included these limitations in Plaintiff's RFC, and because the RFC was based on the opinion of a state agency medical consultant, it was supported by substantial evidence. *See, e.g., Buford v. Colvin,* 824 F.3d 793, 797 (8th Cir. 2016).

### 3. Plaintiff's Ability to Perform Work

Plaintiff claims that even if the ALJ correctly formulated his RFC, he would be unable to perform the jobs that the ALJ identified. (Doc. 9, p. 34.) Specifically, Plaintiff contends that while the ALJ found that he could work as a "janitorial worker," janitorial workers must be able to work under direct and concrete supervision, and must sometimes interact with the general public, both of which exceed the limitations in Plaintiff's RFC. (*Id*. at p. 35.) The Court need not address this argument, because even if Plaintiff cannot work as a janitorial worker, he presents no arguments as to why he cannot work as a bakery worker or small products assembler—the two other jobs the ALJ identified—and so any error is harmless. (R. at 24.)

6

Case 5:21-cv-06070-BP   Document 16   Filed 02/25/22   Page 6 of 7

Finally, Plaintiff argues that the ALJ erred in relying on the VE's testimony because the hypothetical question the ALJ posed—which incorporated the limitations in Plaintiff's RFC—was invalid for the reasons discussed above. Because the Court rejects Plaintiff's contention that he is subject to additional limitations, it finds that the ALJ's hypothetical question was proper, and therefore that the VE's testimony was substantial evidence to support the ALJ's determination that Plaintiff could perform work that exists in significant numbers in the national economy. *Milam v. Colvin*, 794 F.3d 978, 985–86 (8th Cir. 2015).

### III. CONCLUSION

For the foregoing reasons, the Court finds that substantial evidence supports the ALJ's determination of Plaintiff's RFC. Consequently, the Commissioner's final decision denying benefits is **AFFIRMED**.

**IT IS SO ORDERED.**

**DATE**: February 25, 2022

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT